UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFF A. MOYER,

     Appellant / Plaintiff,

                                CASE No. 1:20-cv-756

v.

                                HON. ROBERT J. JONKER

LEE VANPOPERING,

     Appellee / Defendant.

_____/

## OPINION AND ORDER AFFIRMING BANKRUPTCY COURT'S DECISION

### INTRODUCTION

Lee VanPopering recorded a deed conveying his interest in commercial property to James Suschil but he never delivered the deed to Mr. Suschil and he did not tell Mr. Suschil about it when he recorded the deed in 2002.[1]   More than a decade later, Mr. VanPopering wanted to sell his interest and he needed to clean up the record title.  He asked Mr. Suschil to execute paperwork that quit-claimed any interest in the property back to him, which Mr. Suschil did.  But between the original recording and the later quitclaim, Mr. Suschil and his wife, Renee, had declared Chapter 7 bankruptcy.  And at the time of the bankruptcy filing, the record would have shown Mr. Suschil as the property owner even though he knew nothing about it.  Did this make the property part of

---

[1] Yes, that's odd, to be sure! Mr. VanPopering intimates that the "record only" decision was an estate planning device.  Trustee Moyer suggests that Mr. VanPopering's motives had more to do with protecting the asset from potential creditors of Mr. VanPopering at the time.  The actual motive is not material to the Court's decision, or to either party's analysis.

the bankruptcy estate? The Trustee says it did and so when he discovered the issue, he initiated an adversary proceeding to recover the property for the Suschil creditors.[2]

Chief Bankruptcy Judge Dales resolved the matter on cross-motions for summary judgment. He determined that the Trustee could not succeed on any of his theories against VanPopering because the Trustee's right to recovery depended on whether there was actually a valid conveyance in 2002 under Michigan law, or simply a naked recording without a valid conveyance. This, in turn, depended on whether Mr. VanPopering delivered the deed because delivery is essential to a valid conveyance in Michigan. Chief Bankruptcy Judge Dales found there was no delivery and ruled against the Trustee. The Trustee appeals that decision, and the Bankruptcy Court's subsequent denial of a motion for reconsideration. The Trustee says the decision against him misapplies well-established law under Michigan's recording statute. In this Court's view, the Bankruptcy Court reached the correct decision. Accordingly, the Court AFFIRMS the decision of the Bankruptcy Court.

## BACKGROUND

### 1. Factual Background

Lee VanPopering and Frank Hoffmeister formed a business relationship in 1983 to manage a four-unit commercial building located in Plainfield Township, Michigan. The two individuals obtained the property on October 4, 1983, when it was conveyed by the then-owners via warranty deed in two, undivided one-half tenant-in-common interests, one each to VanPopering and Hoffmeister.[3] Only the VanPopering interest is at issue in this case.

---

[2] The Trustee did not discover this issue until after the Suschil bankruptcy had originally closed.

[3] More specifically, the warranty deed conveyed an undivided one-half tenant-in common interest to Frank Hoffmeister and his wife, Leona, and an undivided one-half tenant in common interest to Erma VanPopering, Appellee Lee VanPopering's mother. Two months later, on December 2,

In 2002, VanPopering drafted a quit-claim deed ostensibly conveying his one-half interest in the property to James Suschil, one of his employees.  This was done, VanPopering says, for estate planning purposes and he intended that the deed be delivered, and title pass to Mr. Suschil, only upon VanPopering's death.[4]  The deed was recorded with the Kent County Register of Deeds, but VanPopering did not deliver the deed to Mr. Suschil.  Nor did he tell Mr. Suschil about it at the time.   And Mr. Suschil did not accept the deed.[5]  It is furthermore undisputed that James Suschil did not receive rental payments from the tenants at the property; did not insure the property; did not pay taxes on the property; and did not do or pay anything else a property owner would normally do.

On October 12, 2005, James Suschil and his wife, Renee Suschil, filed for Chapter 7 bankruptcy.  The Suschils' bankruptcy schedule did not list the interest in the Plainfield Township property as an asset because they had no knowledge of the 2002 recorded deed.  The Suschils received a discharge sometime in 2007.  The case remained open, however, another ten years while state court litigation involving VanPopering and the Trustee on the other issues was ongoing.

According to VanPopering, sometime in 2014—after the discharge, but while the Suschils' bankruptcy case was still pending—VanPopering learned of some financial difficulties that his business partner, Dr. Hoffmeister, was experiencing.  To free up capital for Dr. Hoffmeister, VanPopering thought about selling the Plainfield Township property.  VanPopering's attorney,

_____

1983, Erma VanPopering conveyed her interest to her son Lee.  The Hoffmeister interest subsequently passed to Dr. Martin "Mitt" Hoffmeister.

[4] Like the Trustee, this Court finds reason to doubt whether that was really the motive, but ultimately VanPopering's intent does not bear on the legal analysis.

[5] The Trustee argued in a motion for reconsideration in the Bankruptcy Court, and argues here on appeal, that the deed was deemed delivered and accepted under Michigan law by James Suschil when he later signed a quitclaim deed conveying whatever interest he had back to VanPopering. But the Trustee agrees there is no evidence Mr. Suschil actually accepted the deed in 2002, or even that he knew anything about it at the time.

Jack Holwerda, performed a record search and found the 2002 deed.   Attorney Holwerda advised

VanPopering that the Suschils would need to be removed from the chain of title before any sale.

On August 8, 2014, Attorney Holwerda gave two draft quit-claim deeds to VanPopering "to

reverse the transaction of several years ago when you drafted a quit-claim deed to Jim [Suschil]

for what you told me was for estate planning purposes."

VanPopering presented the two deeds to the Suschils by telling them he had some

paperwork for the two to sign.   The Suschils abided by the request and signed the documents

without question.   Indeed, the record reflects that VanPopering obtained the Suschils' signatures

without telling them what the paperwork was or why they needed to sign it.   VanPopering did not

immediately record the two quit-claim deeds that the Suschils had executed.   Instead, the deeds

were recorded on August 17, 2017, a month after the Suschils' bankruptcy case had closed, and

the same day that VanPopering, along with Dr. Hoffmeister, sold the Plainfield property.

VanPopering's share of the sale proceeds for the interest in the property was $152,500.

Sometime in 2018, the Trustee received information about the 2002 and 2014 deeds.   The

Suschil bankruptcy case was reopened under Section 350 and the Trustee initiated an adversary

proceeding against VanPopering.

2.   *The Bankruptcy Court Proceedings.*

The Trustee and VanPopering presented their theories in competing motions for summary

judgment in the adversary proceeding.   The Trustee argued that he acquired the Suschil interest in

the Plainfield property under Section 544(a)(1) and 544(a)(3) of the Bankruptcy Code using his

"strong arm" powers as a hypothetical lien creditor or bona fide purchaser of the property.   This is

so because as of the petition date, James Suschil, not VanPopering, was the record title owner and

the Trustee was entitled to rely on the record title and take the interest that the record showed

4

James Suschil as holding.  VanPopering disagreed and alleged that the Trustee was entitled to nothing because Suschil never acquired anything in 2002.  The record title, standing alone, did not effectively convey anything because there was no delivery to or acceptance of the 2002 deed by Mr. Suschil.  Without delivery and acceptance, there was no valid conveyance.

In a decision dated June 19, 2020, the Bankruptcy Court agreed with VanPopering.  Making an "*Erie* guess," the Bankruptcy Court determined that the Michigan Supreme Court would conclude that a recorded, but undelivered, deed would not convey title under Michigan's recording statute, MICH. COMP. LAWS § 565.29.  The Bankruptcy Court recognized a presumption of delivery for a recorded deed but concluded that VanPopering had rebutted the presumption of delivery in the case.  The Bankruptcy Court granted VanPopering's motion, denied the Trustee's motion, and entered judgment dismissing the Trustee's Complaint.

The Trustee timely filed a motion for reconsideration.  He argued, first, that there was delivery and acceptance of the 2002 deed as a matter of law when James Suschil executed and returned the 2014 deed that Attorney Holwerda had drafted and that VanPopering had given to Suschil. Second, the Trustee argued that the Bankruptcy Court erred in concluding that the recording statute did not address the situation at hand as it would, in the Trustee's mind, eviscerate the protections of the recording statute for bona fide purchasers.  The Bankruptcy Court denied the motion in an Order dated July 28, 2020.  With respect to the first argument, the Court found that it was improperly raised for the first time on reconsideration, but that it failed on the merits in any event.  The Bankruptcy Court further adhered to its previous rulings on the recording statute.

*3.   Procedural History*

On August 13, 2020, the Clerk's Office docketed the Trustee's notice of appeal in this case. In the briefing, the parties reiterate and amplify their positions before the Bankruptcy Court.  The

Court heard argument on the matter on March 10, 2021, and thereafter took it under advisement.

This is the decision of the Court.

## LEGAL STANDARD

When reviewing a bankruptcy court's decision on appeal under 28 U.S.C. § 158(a)(1) the

bankruptcy court's conclusions of law are reviewed de novo, and its factual findings are affirmed

unless they are clearly erroneous.  *In re Made in Detroit, Inc.*, 414 F.3d 576, 580 (6th Cir. 1996);

255 *Park Plaza Assocs. Ltd. P'ship v. Conn. Gen. Life Ins. Co.*, 100 F.3d 1214, 1216 (6th Cir.

1996).  A factual finding is clearly erroneous "when the reviewing court on the entire evidence is

left with the definite and firm conviction that a mistake has been committed."  *In re DSC, Ltd.*,

486 F.3d 940, 944 (6th Cir. 2007) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S.  564,

573 (1985)).

## DISCUSSION

### 1.  The Effectiveness of the 2002 Deed

The Court begins, as the Bankruptcy Court did, with the effectiveness of the 2002 deed.

Michigan law clearly spells out the necessity of delivery and acceptance for a deed to become

effective.  Recording a deed creates a presumption but the presumption may be rebutted:

> A deed becomes effective when delivery occurs, not when the deed
> is executed or recorded. *Ligon v. Detroit,* 276 Mich. App 120, 128;
> 739 N.W.2d 900 (2007). Delivery is required to show that the
> grantor intended to convey the property described in the deed.
> *Energetics, Ltd. v. Whitmill,* 442 Mich. 38, 53; 497 N.W.2d 497
> (1993). Acceptance is necessary for a deed to be valid, as there can
> be no delivery without acceptance. *Gibson v. Dymon,* 281 Mich.
> 137, 140–141; 274 N.W. 739 (1937). Delivery may be presumed
> from recording of a deed during a grantor's lifetime. MCL
> 600.2110; *Finstrom v. Baldwin,* 356 Mich. 552, 556; 96 N.W.2d 798
> (1959). However, a deed can be set aside when the presumption of
> delivery is overcome. *Creller v. Baer,* 354 Mich. 408, 412; 93
> N.W.2d 259 (1958). In addition, the subsequent conduct of the
> parties may be taken into consideration in determining whether there

> was intention to pass title. See *Tighe v. Davis,* 283 Mich. 244, 249–
> 250; 278 N.W. 60 (1938).

*In re Buchinger Revocable Living Trust*, Case No. 295544, 2011 WL 521183, at \*3 (Mich. App.

Feb. 15, 2011).

There is no question in this case that the 2002 deed was recorded during VanPopering's

life.  Accordingly, a rebuttable presumption of delivery to Mr. Suschil arises.  But the Bankruptcy

Court found, and this Court agrees, that the factual record here effectively rebuts that presumption.

VanPopering testified that he never delivered the deed, and Suschil confirmed that he had no

knowledge of the deed.  The subsequent conduct of the parties—no receipt of rents or payment of

expenses on the property by Mr. Suschil, along with VanPopering's intention to finance the

property for Dr. Hoffmeister—buttress this conclusion.  There was no evidence to the contrary.

Without delivery of the deed, there was never any effective conveyance to the Suschils and nothing

for the Trustee under Section 541.

In the motion for reconsideration, and now on appeal, the Trustee asserts a different theory

and contends that there was delivery and acceptance of the 2002 deed as a matter of law in 2014

when James and Renee Suschil executed a quit-claim deed to VanPopering.  According to the

Trustee, where a grantor records a deed appearing to convey a property to a grantee, but fails to

deliver the deed, a subsequent request and reconveyance of the property back from the grantee to

the grantor amounts to both delivery and acceptance of the deed.  Because the argument was raised

for the first time in a motion for reconsideration, the Bankruptcy Court did not have the benefit of

full briefing on this issue.  Nevertheless, the Bankruptcy Court addressed the question on the merits

in its July 28, 2020, Order.  And both sides address the merits in their briefs here before the Court.

Accordingly, the Court will address the issue on the merits as well.  And on the merits, the 2014

deed did not effectuate delivery of the 2002 deed on the facts of this case.

The Trustee cites this Court to the cases of *Schmidt v. Jennings*, 102 N.W.2d 589 (Mich. 1960), and *Gould v. Day*, 94 U.S. 405 (1878), both of which applied *Jackson v. Cleveland*, 15 Mich. 94 (1866).  The Court in *Gould* described the issue of delivery based on a subsequent reconveyance as follows:

> [I]t is law that a delivery of a deed is essential to pass an estate, and there can be no delivery without a surrender of the instrument or the right to retain it, such delivery will be presumed, in the absence of direct evidence, from the concurrent acts of the parties recognizing a transfer of the title. The question here is not whether the delivery took place at the date of the deed, but whether it took place at all. The acts of the grantor and grantee—the one in asking a reconveyance and the other in making it—were satisfactory evidence that at that time the delivery had been made, and they justified the finding of the jury that the deed had been accepted by [the grantee].

*Gould*, 94 U.S. at 412.

But as the Bankruptcy Court found this is not a case of a delayed delivery of a deed memorializing a conveyance actually recognized by the parties.  *Gould* and *Schmidt* are distinguishable on their facts.  Both cases involved the grantee's knowing reconveyance of property back to the original grantor.  For example in *Schmidt*—a case involving an intra-family dispute following the death of the grantor—the court found delivery where the grantor (the plaintiffs' mother) deeded property to her sons as part of her estate planning.  Delivery and acceptance were found when the mother, deciding that a testate transfer would be more advantageous for tax purposes, told her sons about the deeds, requested they reconvey the property to her, and obtained their signatures.  *Schmidt*, 102 N.W.2d at 383-384.  This case lacks such a knowing acceptance.  Even though this case involves a reconveyance like *Schmidt* and *Gould,* the Bankruptcy Court found that this case lacked any deliberate or knowing acceptance by the Suschils, unlike *Schmidt* and *Gould*.  This factual finding of the of the Bankruptcy Court is not

8

clearly erroneous.  Indeed, it is consistent with the Trustee's own description of what happened. *See* Trustee Br. 13-14, ECF No. 6, PageID.680-681 ("[VanPopering] simply told Debtor James Suschil he had some paperwork he and his wife needed to sign, *without further explanation*, and they, apparently, simply signed it, no questions asked.").  The record demonstrates the Suschils were never informed of the existence of the 2002 deed; there was never a delivery and acceptance of the 2002 deed; and neither VanPopering nor Suschil acted between 2002 and 2014 as if Suschil owned the property.

The Trustee contends that the Suschils nevertheless had a prepetition property interest in the Plainfield Township property that amounted to a contingent or inchoate interest, and that this interest is sufficient to fall into the broad range of "all legal and equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  This argument is not persuasive. To be sure, Section 541's definition of property "is unquestionably broad, and it is well-settled that property of the estate includes 'every conceivable interest of the debtor' held as of the commencement of the case, whether that interest is 'future, nonpossessory, contingent, speculative [or] derivative.'"  *Moyer v. Slotman¸* 2013 WL 7823003, at *5 (Bankr. W.D. Mich. 2013) (quoting *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993), and citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 (1983)).  And based on this broad definition the Trustee argues that "[c]ertainly a recorded deed that, on its face, represents an absolute transfer of real property to the Debtor, that could ripen into an effective conveyance upon the original grantor requested a reconveyance in the future, would fall under those categories [set out in Section 541(a)]." (Trustee Br. at 58, ECF No. 6, PageID.726).  But in the Bankruptcy Court, the Trustee admitted that the recording of an undelivered deed is insufficient to bring property into the estate under Section 541. (See Order, ECF No. 2-2, PageID.46).  And that is all there is here.  There was, as the Bankruptcy

9

Court determined, merely a recorded deed that raised the presumption of delivery and acceptance

under Michigan law. But that presumption was not an interest that could ripen into property of the

bankruptcy estate under Section 541.

For all these reasons, the Court concludes that the 2002 deed was not effective to convey

any interest to the Suschils.

### 2. **The Trustee's Status as a Hypothetical Lien Creditor or Bona Fide Purchaser**

The Court next turns to the Trustee's principal argument, which is that the Bankruptcy

Court erred in concluding that James Suschil needed to have a title enforceable against

VanPopering before the Trustee, as a hypothetical lien creditor or bona fide purchaser, could

acquire title to the property. In these roles, the Trustee argues he was entitled to rely on the chain

of title as of the petition date, which unquestionably showed the record holder in the one-half

interest in the Plainfield Township property as James Suschil. In this, the Trustee invokes the

"strong arm" powers set out in Section 544(a)(1) and (a)(3). The statute provides:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by-
>
> (1) A creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> ***
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

10

11 U.S.C. §§ 544(a)(1), 544(a)(3).

Before the Bankruptcy Court, and here on appeal, the Trustee argues that in exercising the power of a hypothetical bona fide purchaser,[6] it does not matter whether the deed was delivered by VanPopering to James Suschil in 2002. What matters is that the deed to James Suschil was recorded and that, at the time the Suschils' declared bankruptcy, James Suschil was the record title holder of the interest in the Plainfield Township property. Whatever unrecorded interest VanPopering had at that point as the grantor does not matter according to the Trustee. In other words, VanPopering's unrecorded grantor's interest must be treated just like the unrecorded interest of a competing grantee.

The critical Michigan statute provides:

> Every conveyance of real estate within the state hereafter made which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded.

MICH. COMP. LAWS § 565.29. The Bankruptcy Court concluded that the language of the statute did not apply to the facts of the case involving competition between an unrecorded grantor interest, and a recorded, competing grantee's interest from the same grantor. Here the question was whether a single recorded but undelivered deed in 2002 validly conveyed anything at all, or whether actual title remained with the grantor who never completed delivery. In the absence of delivery, there was no conveyance and the "[e]very conveyance" trigger of the statute was never tripped. Concluding that the Michigan courts would not interpret the recording act to displace the normal

---

[6] While the Trustee also depends on the rights of a lien creditor under Section 544(a)(1), the Trustee found that the analysis was the same because the property at issue involves real estate. The parties have not identified any material difference on appeal. Accordingly, the Court focuses on the rights of the Trustee under Section 544(a)(3) as a hypothetical bona fide purchaser.

11

rules of delivery and acceptance, the Bankruptcy Court found that the Trustee's argument as a

bona fide purchaser could not succeed against VanPopering as the grantor.

The Court agrees with the fundamental point the Bankruptcy Court made that the race-

notice statute does not fit neatly into the facts of this case.  As the Bankruptcy Court observed:

> To apply the statute, the court must first identify the "conveyance"
> of real estate" that the legislature intended to invalidate against a
> subsequent purchaser.   Under MICH. COMP. LAWS § 565.29, a
> "conveyance" is, strictly speaking, the only transaction the statute
> purports to invalidate.   Clearly, the Trustee cannot rely on the
> conveyance purportedly effected through the 2002 Deed because (i)
> that deed was recorded (albeit improperly) and (ii) voiding the
> supposed conveyance would establish VanPopering's interest in the
> Property.
>
> Further, Mr. VanPopering is not claiming any interest based on an
> unrecorded conveyance: the summary judgment record establishes
> that the 2002 Deed was never delivered, so he retained, (i.e., did not
> convey), his interest in the Property.  The Trustee is asking the court
> to treat what is clearly not a conveyance under state case law (the
> recording of an undelivered deed) as a conveyance for purposes of
> a state statute.  The court is unwilling to stretch the recording act
> that far.
>
> The text of MICH. COMP. LAWS § 565.29 clearly contemplates an
> evaluation of two conveyances from the same grantor (or from a
> grantor in the grantor's chain of title), yet in our case, as determined
> above, only one conveyance has occurred – the theoretical
> conveyance by the Debtors to the Trustee as BFP that § 544(a)(3)
> requires the court to hypothesize.  The court reads the recording act
> as addressing priority disputes involving two conveyances, one
> recorded and one not.

(ECF No. 2-2, PageID.33-34).

The Trustee agrees with some of this analysis.  The Trustee agrees that he is not seeking to

void the 2002 deed from VanPopering to James Suschil.  And the Trustee further concurs that the

statute contemplates two conveyances, one recorded and one not.  Where the Trustee departs from

the Bankruptcy Court's reasoning is in the second conveyance.  The Trustee argues that what is

void is a 2014 conveyance of ownership back to Mr. VanPopering that was not recorded before the Suschil Petition date—the date the Trustee exercises strong arm powers as hypothetical bona fide purchaser. But this argument assumes that Suschil acquired title to the Plainfield Township property interest in the first place, and the Court fails to see that on this record for all the reasons already addressed. In *Hogadone v. Grange Mut. Fire Ins. Co.*, 133 Mich. 339 (1903), a husband claimed he recorded a deed to his wife, and apparently told her he had done so, to avoid creditors, but he did not intend that title should pass. As such, he never delivered the actual deed to his wife. Under the facts of the case, the court found no title passed. That is the case here. Mr. VanPopering never delivered the deed to Mr. Suschil. Indeed, unlike in *Hogadone*, Mr. VanPopering never even told the supposed grantee about the recorded deed.

The Trustee argues that a Bona Fide Purchaser is different, and that under the statute, he is entitled to rely on the chain of title, and acquire such title as the seller appears to hold. He faults the Bankruptcy Court for likening the case to those of forged deeds in cases where the apparent grantor never held an interest in the property. This is not such a case, the Trustee argues, since VanPopering actually had an interest in the property. But the Trustee overreads the overall point the Bankruptcy Court was making, which is that there are at least instances where a bona fide purchaser cannot exclusively rely on the recorded chain of title.

Nor is the Court convinced that the definition of "conveyance" in MICH. COMP. LAWS § 565.35 bears the weight that the Trustee claims it does with respect to the 2002 recorded but undelivered deed. The statute says the term shall be "construed to embrace every instrument in writing" affecting real estate. The overall point, as the Court sees it, is not to write common law requirements of a valid conveyance out of consideration, rather it is to make sure that the form of document used for an otherwise valid conveyance is broadly defined to cover everything except

13

the statutory carve outs of wills, short term leases, and land contracts.  The definition does not

transform every paper regarding property into a valid conveyance even in the absence of delivery.

When that definition is applied to Section 565.29, the Court sees the statute as setting up exactly

what the Bankruptcy Court described: a way to sort out competing claims between grantees of two

or more otherwise valid conveyances, resolving them in favor of who recorded first, voiding an

earlier, unrecorded conveyance.  But for the reasons set out above, the 2002 deed was not a valid

conveyance of anything.

The fundamental problem for the Trustee is that the Suschils never actually acquired title

to the Plainfield Township property interest because the 2002 deed was never delivered.  And "the

recording of an instrument cannot, of itself, make an invalid grant valid."  *von Meding v. Strahl*,

30 N.W.2d 363, 369 (Mich. 1948).  Put another way, "[a]n instrument wholly void, such as an

undelivered deed . . . cannot be made the foundation of a good title, even under the equitable

doctrine of *bona fide* purchase." *Federal Nat. Mortg. Ass'n v. George*, Case No. EDCV 14-01679-

VAP (SPx), 2015 WL 4127958, at *4 (C.D. Cal. July 7, 2015) (quoting *Trout vy Taylor*, 220 Cal.

652, 656, 32 P.2d 968 (1934).  Thus, to do what the Trustee seeks is not in keeping with the statute

and common understanding of a bona fide purchaser.

The Court concludes, as the Bankruptcy Court did, that Michigan courts would quiet title

in favor of VanPopering because there was no delivery of the 2002 deed.

## CONCLUSION

For these reasons, the decisions of the United States Bankruptcy Court for the Western

District of Michigan in Bankruptcy Case No. 05-17246 and Adversary Proceeding 19-80045 that

the Trustee appeals from are **AFFIRMED.**

**IT IS SO ORDERED.**


Dated:    September 27, 2021                     /s/ Robert J. Jonker
                                                 ROBERT J. JONKER
                                                 CHIEF UNITED STATES DISTRICT JUDGE